IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PEGGY PIERCE, ISAAC TURNER, MARCUS LUSTER, and DENNIS TRAITEUR, JR., , )<br>)<br>)<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>COMMONFIELDS OF CAHOKIA )<br>PUBLIC WATER DISTRICT, MARILYN )<br>STRINGFELLOW, CAROLYN )<br>TOUCHETTE, MIKE MILLATTI, and )<br>ERMA MILLARD, )<br>)<br>Defendants. | Case No. 10–cv–182–SCW |

## MEMORANDUM AND ORDER

**WILLIAMS, Magistrate Judge:**

### I. Introduction

Before the Court is Defendants' Motion for Summary Judgment and Supporting Memorandum (Doc. 77). Specifically, Defendants seek summary judgment on all the claims of Plaintiffs Peggy Pierce, Isaac Turner, Marcus Luster, and Dennis Traiteur, Jr. Plaintiff Dennis Traiteur, Jr. has filed a Response (Docs. 79, 80, & 81) in opposition to the summary judgment. Plaintiff Peggy Pierce has also filed a Response in opposition; however, the Court has since been informed that Plaintiff Pierce has settled her claims with Defendants and as such the Court excludes her from the summary judgment motion. Plaintiffs Isaac Turner and Marcus Luster have failed to respond to the pending summary judgment motion. Based on the following, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motion for summary judgment (Doc. 77).

### II. Factual Background

Plaintiffs Peggy Pierce, Isaac Turner, Marcus Luster, and Dennis Traiteur, Jr., filed suit

against Commonfields of Cahokia Public Water District (hereinafter "Commonfields") as former employees (Doc. 2-1). Counts I-IV allege Plaintiffs were retaliated against for their political affiliation, and that this violated their freedom of speech under the First Amendment and their right to equal protection (*Id.*). These same federal claims are also brought against the individual defendants Marilyn Stringfellow, Carolyn Touchette, Erma Millard, and Mike Millatti. Count IX of Plaintiffs' Complaint is brought specifically by Traiteur, Jr. for a state law breach of contract claim against Commonfields. Counts X-XI, brought by Plaintiffs Turner and Luster are also state law breach of contract claims. On February 29, 2012, Defendants filed a motion for summary judgment (Doc. 77). Plaintiff Pierce and Traiteur, Jr. have filed responses (Docs. 82, 83, 84 and 79, 80, 81, respectively). Defendants have filed reply briefs to both responses (Docs. 90 & 89, respectively). To this date, Plaintiffs Luster and Turner have failed to file responsive pleadings.

This action stems from the September 9, 2009 termination of Plaintiffs' employment by Defendants. Defendant Traiteur, Sr. is the general manager of Commonfields of Cahokia Public Water District (Doc. 77-1 at p. 22). The general manager has the authority to employ, discharge, and fix the compensation of all employees (*Id.* at p. 23). Traiteur, Sr. acknowledged that everyone was hired for political reasons (*Id.* at p. 77). The general manager is required to give the board a budget containing all operating expenses, and the board has to pass the budget before it is accepted (*Id.* at pp. 77). The budgets or amended budgets have to be voted on by the board during a meeting (*Id.* at pp. 82-83).

Marilyn Stringfellow was elected to the board of trustees for Commonfields in 2007 (Doc. 77-3 at p. 8). In the election of 2009, Stringfellow campaigned for Evans, Jones, and Bergman who were unsuccessful (*Id.* at pp. 9-10). According to Carolyn Touchette, Peggy Pierce, Denny Traiteur, Sr., and Denny Traiteur, Jr. campaigned for those candidates as well (Doc. 77-5 at p. 21). Carolyn Touchette was elected to the board in 2009 with Erma Millard and Mike Millatti (*Id.* at p. 11).

Employee Angie Kritz campaigned for Touchete, Millatti, and Millard (*Id.* at p. 21). After being elected, the board members eliminated certain positions allegedly to "get ahold of the budget." (Doc. 77-3 at p. 17). The board relied on statements made by Dennis Traiteur, Sr. Regarding the budget deficit because he would not provide documents for the board to view (Doc. 77-5 at p.50; Doc. 77-3 at pp. 21-22).

Dennis Traiteur, Jr. was hired by Commonfields on April 27, 2009 (Doc. 77-4 at p. 8). Traiteur, Jr. was hired by his father Dennis Traiteur, Sr. without board approval (Doc. 77-1 at p. 26). Prior to being hired by his father, Traiteur, Jr. had no experience with wastewater or supervisory skills. (Doc. 77-4 at pp. 37-38). Traiteur, Jr. entered into a two year contract of employment with Commonfields with the contract to run from April 27, 2009 to April 27, 2011 (Doc. 71 Ex. A). Under the employment contract he could only be fired for "just cause" (*Id.* at p. 2). Traiteur, Jr.'s official title was "Assistant Superintendent" and his official job description was:

> Directs and supervises the operation and maintenance of the Commonfields of Cahokia Public Water District's water and wastewater distribution system. Serves as the first line supervisor for all employees working in the Water and Wastewater Distribution Division. Reports directly to the Superintendent and/or General Manager.

(Doc. 80 Ex. A; Doc. 77-4 at p. 8). Traiteur, Jr. was discharged from employment with Commonfields when his position was eliminated by the board through Resolution #62 (Doc. 80-2).

### III. Summary Judgment Standard

Under **FEDERAL RULE OF CIVIL PROCEDURE 56**, summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, **477 U.S. 317, 322 (1986).** *See also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, **422 F.3d 603, 607 (7th Cir. 2005)**. The burden is upon the moving party to establish that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving

party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). *See also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). A fact is material if it is outcome determinative under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ballance v. City of Springfield, Illinois Police Department*, 424 F.3d 614, 616 (7th Cir. 2005); *Hottenroth v. Village of Slinger,* 388 F.3d 1015, 1027 (7th Cir. 2004). Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals that "alternate inferences can be drawn from the available evidence." *Spiegla v. Hull*, 371 F.3d 928, 935 (7th Cir. 2004). *See also Anderer v. Jones*, 385 F.3d 1043, 1064 (7th Cir. 2004).

The inquiry performed is the threshold inquiry of determining whether there is the need for a trial, whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

> [T]his standard mirrors the standard for a directed verdict under **FEDERAL RULE OF CIVIL PROCEDURE 50(a)**, which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). *See also Celotex Corporation v. Catrett*, 477 U.S. 317, 322-23 (1986); *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 637 (7th Cir. 2001); *Sybron Transition Corporation v. Security Insurance Company of Hartford*, 107 F.3d 1250, 1255 (7th Cir. 1997).

A showing of a mere factual disagreement between the parties is insufficient, the factual issue must be "material," meaning that the issue must be one affecting the outcome of the suit. *See Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily

renders all other facts immaterial." *Id*.

The Seventh Circuit has stated that summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, **486 F.3d 1017, 1022 (7th Cir. 2007) (quoting** *Hammel v. Eau Galle Cheese Factory*, **407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted))**. The moving party bears the initial burden of producing evidence that identifies "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes to demonstrate the absence of a genuine issue of material fact." *Outlaw*, **259 F.3d at 837 (quoting** *Logan v. Commercial Union Ins. Co.*, **96 F.3d 971, 978 (7th Cir. 1996))**. After the moving party has satisfied its burden to establish that no genuine issue of material fact exists, the burden shifts to the non-moving party to "set out specific facts showing a genuine issue for trial." **FED.R.CIV.P. 56(e)(2)**. The non-moving party "may not rely merely on allegations or denials in its own pleading." *Id*. The opposing party must, instead, "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing there is a genuine issue for trial.'" *Celotex*, **477 U.S. at 324.**

### IV.  Analysis

**A.    Plaintiffs Isaac Turner and Marcus Luster**

As to Plaintiffs Isaac Turner and Marcus Luster, Defendants argue that they are entitled to summary judgment on all of Plaintiff Turner's and Luster's claims. Although Plaintiff Turner and Luster were given notice of the filing of the summary judgment motion, neither Plaintiff has responded to the motion as of this date. The effect of a non-movant's failure to respond to a motion for summary judgment is that "it constitutes an admission by the non-movant that there are no disputed issues of genuine fact..." *Flynn v. Snadahl*, **58 F.3d 283, 288 (7th Cir. 1995).** "[T]he district court clearly has

authority to enforce strictly its Local Rules, even if a default results." *Tobel v. City of Hammond*, **94 F.3d 360, 362 (7th Cir. 1996).** "Failure to timely file a response to a motion may, in the Court's discretion, be considered an admission of the merits of the motion." **LOCAL RULE 7.1(c);** *see also* **FED.R.CIV.P. 56(e).** "District courts are allowed to strictly enforce summary judgment deadlines…" *Williams v. Shinseki*, **373 Fed.Appx. 611, 614 (7th Cir. 2010) (quoting** *Raymond v. Ameritech Corp.*, **442 F.3d 600, 607-8 (7th Cir. 2006)).** As Plaintiff Turner and Luster have failed to timely respond to Defendants' motion for summary judgment, the Court deems their failure to respond an admission to the merits of Defendants' motion. Thus, the Court finds that Defendants are entitled to summary judgment on all of Plaintiffs Turner's and Luster's claims against them. Accordingly, the Court **GRANTS** summary judgment for Defendants as to Plaintiff Turner and Luster.

B.  **Dennis Traiteur, Jr.**

   1.   **Duplicative Federal Claims**

Defendants first argue that they are entitled to summary judgment on Count VIII because Plaintiff Traiteur, Jr. does not specifically allege that the claims are against the individual defendants in their individual capacity and thus the claims are official capacity claims which are duplicative of the same claim against Defendant Commonfields. In support of their claim, Defendants rely heavily on *Hill v. Shelander*, **924 F.2d 1370, 1372 (7th Cir. 1991)**. However, in *Hill*, the Seventh Circuit stated that it would not presume that a defendant was being sued in his official capacity every time that the complaint fails to clearly indicate which capacity a defendant is being sued in. *Id*. **at 1373.** Instead, the Seventh Circuit stated that in cases where the capacity of the defendant is not specified, it would look at the substance or nature of the claim alleged:

> Where the plaintiff seeks injunctive relief from official policies or customs, the defendant has been sued in her official capacity; where the plaintiff alleges tortious conduct of an individual acting under color of state law, the defendant has been sued in her individual capacity.

*Miller v. Smith*, **220 F.3d 491, 494 (7th Cir. 2000) (citing** *Hill*, **924 F.2d at 1373-74.).** Defendants have failed to point to any case law specifically preventing a party from suing individuals in both their official and individual capacity.

Here, in looking at the complaint "in its entirety", it is clear to the Court that Plaintiff Traiteur, Jr. intended to raise claims against the board members in their individual capacity. Plaintiff Traiteur, Jr. raises two separate § 1983 claims, one in Count IV against the Commonfields of Cahokia Public Water District and one in Count VIII against Marilyn Stringfellow, Carolyn Touchette, Mike Millatti, and Erma Millard. While Count VIII does not specify that the claim is against the defendants in their individual capacity, to construe the separate claim as in their official capacity would, as defendants put it, make the claim redundant as a claim against individuals in their official capacity is really just a claim against the municipality. *Pourghoraishi v. Flying J, Inc.,* **449 F.3d 751, 765 (7th Cir. 2006) ("when a plaintiff sues an individual officer in his official capacity, the suit is treated as if the plaintiff has sued the municipality itself.")**. Thus, the Court finds that from looking at the substance of Plaintiff Traiteur, Jr.'s Complaint that Count VIII is intended to be a claim against defendants in their individual capacity. This finding is further backed by the defendants' own response to the Complaint. In Defendants' Answer, they raise the defense of qualified immunity as well as reiterate the defense in the present motion for summary judgment. A defense of qualified immunity is only applicable to individual capacity complaints, thus it is clear to the Court that Defendants themselves construed Plaintiff's complaint as also raising individual capacity claims. *Stevens v. Umstead*, **131 F.3d 697, 707 (7th Cir. 1997) (court must also consider how parties have treated the case in determining what capacity a plaintiff is suing in, finding that parties operated under assumption that defendant was sued in individual capacity as defendant raised qualified immunity as a defense).** Thus reading the complaint as a whole, the Court finds that Count VIII is

a claim against the individual defendants in their individual capacity.

### 2. Legislative Immunity

The individual defendants also maintain that they are entitled to summary judgment because, even if Plaintiff Traiteur, Jr. has stated a claim against the individual defendants for First Amendment violations, Defendants have absolute legislative immunity. Legislative immunity protects government officials when they are acting in their legislative capacity. *Rateree v. Rockett*, **852 F.2d 946, 949 (7th Cir. 1988) (citing** *Tenney v. Brandhove*, **341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019(1951));** *Bagley v. Blagojevich*, **646 F.3d 378, 391 (7th Cir. 2011) ("Absolute legislative immunity attaches to all actions taken 'in the sphere of legitimate legislative activity.'") (quoting** *Bogan v. Scott-Harris*, **523 U.S. 44, 54, 118 S.Ct. 966 (1998)))**. However, legislative immunity only applies to those legislators acting in their legislative capacity and does not protect legislators from administrative or executive acts. *Rateree,* **852 F.3d at 950 (citing** *Tenney*, **341 U.S. at 379, 71 S.Ct. at 789-90)**. Determining whether an action is legislative depends "on the nature of the act, rather than on the motivie or intent of the official performing it." *Bagley*, **646 F.3d at 391.** While the Seventh Circuit has generally agreed that employment decisions are generally administrative, "employment decisions are not administrative when accomplished through traditional legislative functions." *Rateree*, **852 F.2d at 950.** Specifically, in *Rateree,* the Seventh Circuit held that a budgetary decision to eliminate a position altogether was a legislative action as it eliminates the employee's position altogether and another person was not hired to replace the employee. *Id*. Similarly, in *Benedix v. Village of Hanover Park, IL*, **677 F.3d 317 (7th Cir. 2012)**, the Seventh Circuit found that an ordinance abolishing a position and thus terminating an employee who held that position was a legislative action entitled to legislative immunity. The Seventh Circuit held that the ordinance was a legislative action as it was "adopted through the legislative process, and [had] the force of law." *Benedix*, **677 F.3d at 318**.

Further, a legislative action is protected by legislative immunity "no matter the motives of those who proposed, voted for, or otherwise supported the proposal." *Id*.

Here, Defendants Stringfellow, Touchette, Millatti, and Millard contend that their action of eliminating Plaintiff Traiteur, Jr.'s position is entitled to legislative immunity because they voted to adopt a resolution which eliminated Plaintiff's position, thus making their actions purely legislative. Plaintiff Traiteur, Jr. has not addressed this issue in his responsive brief and the Court agrees with Defendants' argument. A review of Resolution 62 which the individual defendants signed on September 9, 2009 shows that the board members eliminated the position of "Assistant Superintendent" and terminated the employment of Dennis Traiteur, Jr., who held that position (Doc. 77-7 Ex. 5). Like in *Benedix* and *Rateree*, the board's resolution sought to eliminate the position of "Assistant Superintendent" altogether, which amounts to a legislative action and thus is protected by legislative immunity.[1] It does not matter what the individual board members' motives were, whether for budgetary means or to target a specific employee. *See Benedix*, **677 F.3d at 318 (finding board trustees were entitled to legislative immunity despite the fact that plaintiff argued that the ordinance targeted her because of her political associations**). Instead, all that matters is that their action was adopted through a legislative process and sought to eliminate the position held by Plaintiff, thus making it a legislative action rather than an administrative action. Accordingly, the Court finds that the individual defendants' actions are protected under the doctrine of legislative immunity and thus the Court **GRANTS** summary judgment as to Plaintiff's First Amendment violation claim under § 1983 against

---

[1] The Court notes that not only did Commonfield's Resolution 62 eliminate the position of "Assistant Superintendent" entirely but also specifically discharged and terminated Dennis Traiteur, Jr. as the person currently employed in that eliminated position. It does not appear necessary that Defendants also terminated Plaintiff's employment in the resolution nor does Plaintiff argue that the additional language terminating Plaintiff's employment amount to an administrative, rather than legislative, action.

Defendants Marilyn Stringfellow, Carolyn Touchette, Mike Millatti, and Erma Millard.[2]

However, as to Defendant Commonfields, the doctrine of legislative immunity does not apply. "Municipalities do not enjoy any kind of immunity from suits for damages under § 1983." *Benedix*, **677 F.3d at 318-19.** Thus, legislative immunity does not bar a § 1983 claim against Commonfields, nor is Commonfields entitled to qualified immunity on Plaintiff's claim.

### 3. First Amendment Violations

Defendant Commonfields maintains that it is entitled to summary judgment on Plaintiff Traiteur Jr.'s § 1983 claim for violation of his First Amendment rights. In order for a municipal entity to be liable under § 1983, it must "(1)...[have] a permanent and well-settled municipal custom or practice that, although not authorized by official law or policy, was the moving force behind the plaintiff's constitutional injury; or (2) an individual with final policy-making authority for the municipality (on the subject in question) caused the constitutional deprivation." *Valentino v. Village of South Chicago Heights*, **575 F.3d 664, 674 (7th Cir. 2009) (citing** *Monell v. City of New York*, **436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)).** Here, Plaintiff admits that he is pursuing his claim against Commonfields only under the second theory of liability, that an individual with final policy-making authority, namely the board members, caused the constitutional deprivation.[3]

An individual's political party affiliation enjoys protection under the First Amendment. *Delapaz v. Richardson*, **634 F.3d 895, 899 (7th Cir. 2011) (citing** *Gunville v. Walker*, **583 F.3d**

---

[2] The Court need not decide whether the doctrine of qualified immunity also bars Plaintiff's claims against the individual defendants as the Court has already determined that the individual defendants are entitled to summary judgment under the legislative immunity doctrine.

[3] The Court notes that Defendant Commonfields also argues that it is entitled to summary judgment on Plaintiff's equal protection claim as well as his First Amendment political affiliation claim. However, Plaintiff does not allege in his Complaint nor does he contend in his responsive pleading that Defendant violated his right to equal protection. Instead, Plaintiff only argues that Defendant violated his First Amendment rights by firing him for his political affiliation.

**979, 984 (7th Cir. 2009))**. An employer violates the First Amendment when an individual is fired, demoted, or removed from public employment based on his political affiliation. *Id.*; *see also Zerante v. DeLuca*, **555 F.3d 582, 584-85 (7th Cir. 2009)(citing** *Pleva v. Norquist*, **195 F.3d 905, 911 (7th Cir. 1999))**. In order to establish a prima facie case for a violation of an employee's First Amendment rights, an employee must present evidence that "(1) their speech was constitutionally protected; (2) they suffered a deprivation likely to deter free speech; and (3) their speech was the but-for cause of the employer's actions. *Delapaz*, **634 F.3d a 900 (citing** *Gunville*, **583 F.3d at 983;** *Fairley v. Andrews*, **578 F.3d 518, 525-26 (7th Cir. 2009) (requiring but-for causation))**; *see also George v. Walker*, **535 F.3d 535, 538 (7th Cir. 2008)**. In order to show causation, a party must show that the employer knew of an individual's political activities as a threshold question. *Zerante*, **555 F.3d at 585;** *Delapaz*, **634 F.3d at 900.** Once a party has met his prima facie case, the burden then shifts to the defendant to show that it had a legitimate, non-political reason for firing the employee. *Zerante*, **555 F.3d at 585 (citing** *Hall v. Babb*, **389 F.3d 758, 762 (7th Cir. 2004))**. In other words, the defendants must show that they would have made the same employment decision absent the protected speech. *George*, **535 F.3d at 538 (citing** *Massey v. Johnson*, **457 F.3d 711, 717 (7th Cir. 2006))**. The burden then returns to the plaintiff to show that the proffered reasons were pretextual. *Id*.

Here, Plaintiff Taiteur, Jr. has met his prima facie case. Plaintiff has offered evidence that the Defendant knew of Plaintiff's political activities. During the election, Plaintiff Traiteur, Jr. participated in the elections as a poll watcher (Doc. 77-4 at p.15). Defendant Touchette testified at her deposition that he knew that Traiteur Jr. campaigned for the opposing candidates. Plaintiff has also offered evidence that he was fired for his political activities. Plaintiff offers evidence that after the candidates he supported lost, Plaintiff, along with four other employees who also supported the losing candidates, were terminated. Traiteur Sr., Commonfields general manager, also testified that Plaintiff,

along with the others, were fired for their political oppositions. Thus, the Court finds that Plaintiff has met his prima facie case.

As Plaintiff has established his prima facie case, the burden shifts to Defendant Commonfields to show that it had a legitimate non-political reason for firing Plaintiff Traiteur, Jr. Specifically, Defendant argues that it fired Plaintiff for budgetary concerns and because it felt that Plaintiff was not qualified. Defendant maintains that it fired Plaintiff because of budgetary concerns. Traiteur Sr. informed the new board members that Commonfields had a deficit, no money in the budget, and was on the verge of bankruptcy. Several board members testified that they voted to eliminate Plaintiff Traiteur, Jr.'s position because of the budget problems (Doc. 77-7 at p. 84; Doc. 77-8 at p. 31). Board members testified that they felt eliminating jobs would help to reduce the budget. Touchette also testified that Traiteur Jr.'s position was eliminated because the position was unnecessary and because they believed that Plaintiff was not qualified for the job (Doc. 77-5 at pp. 108-09).

However, Plaintiff has offered evidence that the Defendant's stated reasons are merely pretextual. Specifically, Plaintiff has offered evidence that the reason for firing Plaintiff could not have been budgetary because there was actually money in the budget. Commonfields had over $1.5 million in cash and cash equivalents and the annual financial report showed net assets increased in excess of $700,000 with total net assets over $5 million (Doc. 79-3 at p. 66). Plaintiff has also offered evidence that Defendant's vote on September 9, 2009 was part of course of conduct for political retribution as Plaintiff campaigned for individuals opposing the board members. When the new board members won the election, they fired individuals who supported the opposing candidates including Plaintiff, Mr. Traiteur Sr., and Mr. Traiteur Sr.'s assistant Ms. Pfeffer. Individuals who supported the board members in the election were not fired and Plaintiff has presented evidence that one of the supporters was even promoted despite being labeled the least capable employee by her supervisor. Thus, the Court finds that

there is an issue of fact as to whether Plaintiff was fired from his position because of his political affiliations. The parties dispute numerous facts in this case, including the cause of why Plaintiff was fired. Accordingly, the Court can not grant summary judgment on this issue at this time.

### 4. State Law Breach of Contract

Defendant Commonfields also argues that it is entitled to summary judgment on Plaintiff Traiteur, Jr.'s state law breach of contract claim. Defendant Commonfield argues that it is entitled to summary judgment because Plaintiff's contract was void. Specifically, Defendant argues that the board was neither aware of the contract, voted to approve the contract, or appropriated the funds for Plaintiff's hiring, thus making his contract void.

Under the Public Water District Act, the trustees of the district constitute a board which "shall exercise all the powers, manage and control all the affairs and properties of such district, and shall have power to adopt a corporate seal for such district." **70 ILCS 3705/5.** The board may, in its discretion and by a resolution passed by majority vote, provide for the appointment of a lawyer, engineer, and other officers. **70 ILCS 3705/7.** Further, the board may appoint a general manager who shall serve for a term of five years. **70 ILCS 3705/7.** A general manager "shall have power to employ, discharge and fix the compensation of all employees of the district." *Id*.

Defendant Commonfields argues that the only evidence in support of Plaintiff's claim of breach of contract that he offers is that Traiteur, Sr. had power to hire and fix compensation for employees, but Commonfields argues that under **70 ILCS 3705/13** the Board was required to approve the funds for Traiteur, Jr.'s salary and because it did not authorize those expenditures in excess of the budget, his contract is void. Defendant Commonfields contends that Illinois's "prior appropriation rule" applies to 70 ILCS 3705/13. The "prior appropriation rule" was established by the Illinois Supreme Court in interpreting Municipal Code 8-1-7. *See Metropolitan Water Reclamation District*

*of Greater Chicago v. Civil Service Board of Metropolitan Water Reclamation District of Greater Chicago*, **291 Ill.App.3d 448, 492-93, 684 N.E.2d 786, 789 (1st Dist. 1997) (citing** *Chicago Patrolmen's Association v. City of Chicago*, **56 Ill.2d 503, 309 N.E.2d 3 (1974)).** The Illinois Supreme Court, in interpreting a provision of the Municipal Code, found that under the terms of the statute, "any contract made without a prior appropriation is null and void." *Id*.[4] "Illinois courts have consistently followed this principle, referring to it as the prior appropriation rule." *Id*.; *Klekamp v. City of Burbank*, **266 Ill.App.3d 81, 84, 639 N.E.2d 241, 243-44 (5th Dist. 1994) (Prior appropriation rule was established in the Illinois Municipal Code and interpreted by the Illinois Supreme Court in** *Lindahl v. City of Des Plaines*, **210 Ill. App.3d 281, 568 N.E.2d 1306 (1991) and** *Jordan v. Civil Service Commission*, **246 Ill.App.3d 1047, 617 N.E.2d 142 (1993)).** The First District in *Metropolitan Water Reclamation District of Greater Chicago*, applied the rule to Section 5.8 of the Metropolitan Water Reclamation District Act as the terms of the Act were similarly worded to Section 8-1-7 of the Municipal Code. *Metropolitan Water Reclamation District of Greater Chicago*, **291 Ill.App.3d at 492-93, 684 N.E.2d at 789.**[5]

---

[4] In *Chicago Patrolmen's Association*, the Illinois Supreme Court was asked to interpret section 8-7-1 of the Municipal Code, which provided that:

> [N]o contract shall be made by the corporate authorities, or by any committee or member thereof, and no expenses shall be incurred by any of the officers or departments of any municipality, whether the object of the expenditure has been ordered by the corporate authorities or not, unless an appropriation has been previously made concerning that contract or expense. Any contract made, or any expense otherwise incurred, in violation of the provisions of this section shall be null and void."

*Metropolitan Water Reclamation District of Greater Chicago*, **291 Ill.App.3d at 492, 684 N.E.2d at 789 (citing 65 ILCS 5/8-1-7 (West 1994)).**

[5] The provision of the Metropolitan Water Reclamation District Act that the First District analyzed was very similar to the Municipal Code as it provided that:

> No contract shall hereafter be made, or expenses or liability incurred by the said board

Defendant argues that the "prior appropriation rule" is equally applicable to 70 ILCS 3705/13, making Plaintiff Traiteur, Jr.'s contract void as the board failed to appropriate the necessary funds to account for his salary. The Court finds several problems with this argument. First, the Court fails to see how the "prior appropriation rule" under Municipal Code 8-7-1 is applicable to 70 ILCS 3705/13. The provisions of code which have been construed to establish a "prior appropriation rule" are far different in their terms than 70 ILCS 3705/13. Both Municipal Code 8-7-1 and the Metropolitan Water Reclamation District Act 5.8 set out in their terms that no contract shall be made unless an appropriation has been made by the board. Further, both code sections specifically state that any contract made in violation of the section is null and void. 70 ILCS 3705/13 has no such clear terms voiding a contract. In fact, Section 3705/13 only states that the board may adopt a budget prepared by the general manager along with any revisions and that "no expenditures for operation and maintenance expenses in excess of the budget shall be made during such fiscal year, unless unanimously authorized and directed by the board." The language in Section 3705/13 is a far cry from the specific language set out in Section 8-7-1 and Section 5.8 which specifically prohibit contracts being made without appropriations previously being made by the board. Nor does Section 3705/13 have the specific language voiding all contracts made in violation of the section. Thus, it is far from clear that the language in Section 3705/13 falls under the "prior appropriation rule" as Defendant argues.

---

of trustees, or any member or committee thereof, or by any person or persons, for or in its behalf not-withstanding the expenditure may have been ordered by the said board of trustees, unless an appropriation thereof shall have been previously made by said board in the manner aforesaid. No officer, head of a department, or commission shall, during a budget year, expend or contract to expend any money or incur any liability, or enter into any contract, which, by its terms, involves the expenditure of money for any of the purposes for which provision is made in the appropriation ordinance in excess of the amounts appropriated in said ordinance. Any contract, verbal, or written, made in violation of this section shall be null and void..."

**70 ILCS 2605/5.8 (1994)**.

Further, not withstanding the question of whether Section 3705/13 prevents contracts from being formed without prior appropriation, the Court finds that there are clear issues of fact as to whether the board had approved the appropriations for Plaintiff Traiteur, Jr.'s position. Defendant argues that none of the board trustees were aware of the contract, voted on or approved the appropriation of funds for Plaintiff's contract. Plaintiff, however, points to the fact that he was hired in April 2009, three months before the end of the budget year which ends on June 30, 2009, and that the board presumably approved the new budget which assumably had Plaintiff on there as an employee as they transferred money at the July 2009 meeting for operating expenses which would have included Plaintiff's salary. Further, Plaintiff points to testimony from Stringfellow that there might have been a special board meeting where his hiring was approved and that the board had approved the hiring of three extra positions (Doc. 79-2 at p. 67 and Doc. 81-3 at pp. 122-23). Plaintiff also points out that if his position had not been appropriated, he would have been discharged on July 1, 2009 and not some two months later as the funds would not have been in the budget for his position when the new budget began. Thus, the Court finds that there is an issue of fact as to whether the board had appropriated funds for Plaintiff's position in the budget. Accordingly, the Court cannot grant summary judgment on Plaintiff's breach of contract claim at this time and **DENIES** Defendant Commonfield's motion for summary judgment on this claim.

## V. Conclusion

Accordingly, the Court **GRANTS IN PART AND DENIES IN PART** the summary judgment motion filed by Defendants Commonfield, Marilyn Stringfellow, Carolyn Touchette, Mike Millatti, and Erma Millard. Specifically, the Court **GRANTS** summary judgment as to all Defendants on all of the claims filed by Marcus Luster and Isaac Turner as they have failed to file a Response to the summary judgment motion and the Court thus labels their failure to reply an admission of the merits

of the motion. The Court also **GRANTS** summary judgment as to Stringfellow, Touchette, Millatti, and Millard on Defendant Traiteur, Jr.'s § 1983 claim as they are protected by the doctrine of legislative immunity. However, the Court **DENIES** summary judgment as to Commonfields on Traiteur, Jr.'s § 1983 claim as there are still issues of fact as to whether Defendant Commonfield fired Plaintiff Traiteur, Jr. because of his political affiliations. The Court also **DENIES** summary judgment as to Commonfields on Traiteur, Jr.'s breach of contract claim under Illinois law. Thus, the only claims which remain for trial are:

(1) Plaintiff Traiteur, Jr.'s Count IV § 1983 claim for violations of the First Amendment against Defendant Commonfields.

(2) Plaintiff Traiteur, Jr.'s Count IX breach of contract claim under Illinois law.

**IT IS SO ORDERED**.

DATED: September 20, 2012.

*/s/ Stephen C. Williams*

STEPHEN C. WILLIAMS

United States Magistrate Judge